**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1977

METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY,

Plaintiff, Appellee,

v.

ANDREA LENTZ, MICHAEL LENTZ, JOHN R. LENTZ,
INDIVIDUALLY, d/b/a L&L COLLISIONS,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

David O. Brink with whom Richard D. King, Jr., Nathan A.
Tilden and Smith & Brink, P.C. were on brief, for appellee.
Bruce T. Macdonald for appellants.

September 22, 2003

**Per Curiam**.  Defendants Andrea, Michael, and John R. Lentz, individually and d/b/a L&L Collisions, appeal civil judgments entered upon jury verdicts concluding that they participated in an automobile insurance fraud scheme which damaged plaintiff Metropolitan Property & Casualty Company and violated, inter alia, the Racketeering Influenced and Corrupt Organizations ("RICO") Act.  See 18 U.S.C. §§ 1962, 1964.  Defendants argue that, due to a nearly complete absence of evidence that the United States mails were used in furtherance of the scheme, there was insufficient evidence from which the jury could have found the predicate acts of mail fraud -- the theory under which the RICO claim went to the jury -- and, derivatively, insufficient evidence from which the jury could have found that the alleged acts of mail fraud constituted a "pattern" of racketeering activity.[1] Proceeding on the assumption that their principal appellate argument is meritorious, defendants further contend that the evidence relevant to the RICO counts (which defendants say the jury never should have heard) was so prejudicial that it might well have misled the jury into holding them liable under non-RICO theories.

Our review of the record reveals that defendants did not

---

[1]Defendants also hint at other theories why there was insufficient evidence to support the jury's "pattern" finding, but those theories fail because, in addition to being only minimally developed on appeal, they were not presented with sufficient specificity to the district court before the jury was discharged. See infra.

-2-

present either their principal appellate argument, or the "pattern" argument which is largely built from it, see n.1, above, to the district court with sufficient specificity to have made their position on the matter understood until after the jury verdicts were returned. We will not disturb a lower court's judgment on the basis of an argument raised so late in the game unless the argument persuades us that, among other things, a miscarriage of justice has occurred. See Davignon v. Clemmey, 322 F.3d 1, 13 (1st Cir. 2003) (argument first presented in a post-verdict Fed. R. Civ. P. 50 motion is forfeited); Blockel v. J.C. Penney Co., Inc., 337 F.3d 17, 25 (1st Cir. 2003) (sufficiency arguments must be made with specificity to preserve them for plenary appellate review); Rivera-Torres v. Ortiz Velez, 2003 WL 22006239, at *14 (1st Cir. Aug. 26, 2003) ("claims forfeit[ed] through ignorance or neglect" are subject to plain error review, which permits error correction in civil cases only when the error "resulted in a miscarriage of justice or seriously affected the fairness, integrity, or public reputation of judicial proceedings") (citations and internal quotation marks omitted). There was no miscarriage of justice in this case. Rather than demonstrating or strongly suggesting that no mailings took place in furtherance of the scheme, the record is merely ambiguous about which documents were mailed and which were hand delivered. An ambiguity of this sort does not call into question the fundamental fairness of the trial. To vacate or

reverse the judgments on the basis of an issue that only came into focus after the jury was discharged could encourage sandbagging in future cases with little in the way of present benefits.

Defendants' remaining appellate argument regarding prejudicial spillover depends upon our agreeing with their principal argument. Because we have rejected defendants' principal argument, we reject defendants' remaining argument without further discussion.

**<u>Affirmed</u>**.